```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------X
UNITED STATES OF AMERICA,          :
                                   :   S2 04 Cr. 356 (JFK)
        -against-                  :
                                   :   OPINION and ORDER
OUSSAMA ABDULLAH KASSIR,           :
   a/k/a "Abu Abdullah,"           :
   a/k/a "Abu Khadija,"            :
                                   :
             Defendant.            :
-----------------------------------X
```

APPEARANCES:

> For the United States of America:
> MICHAEL J. GARCIA
> United States Attorney for the
> Southern District of New York
> New York, New York
> Of Counsel: Michael Farbiarz
>             Assistant United
>             States Attorney
>
>
> For the Defendant:
>   Mark S. DeMarco, Esq.
>   Bronx, New York
>   Edgardo Ramos, Esq.
>   New York, New York

**JOHN F. KEENAN, United States District Judge**

**JOHN F. KEENAN, United States District Judge**:

## Background

Defendant has filed an "Omnibus Motion" seeking a "Wade" hearing concerning, or suppressing identifications; Jencks Act (18 U.S.C. § 3500) relief; Federal Rule of Evidence ("FRE") 404(b) relief and Roviaro relief (relating to confidential informants). A motion under Federal Rule of Criminal Procedure 12(d)(2) has been withdrawn.

On February 6, 2006, a superseding Indictment ("Indictment") was filed charging Kassir and two alleged co-conspirators, Mustafa Kamel Mustafa, a/k/a "Abu Hamza," a/k/a "Abu Hamza Al-Masri," a/k/a "Mustafa Kamel," a/k/a Mostafa Kamel Mostafa" ("Abu Hamza"), and Haroon Rashid Aswat, a/k/a "Haroon," a/k/a "Haroon Aswat" ("Aswat"). The Indictment contains 19 counts and charges four theories of criminal conduct: a hostage-taking conspiracy, in which Abu Hamza alone is charged (Counts One and Two); a conspiracy to establish a Jihad training camp in the United States, in which Kassir, Abu Hamza, and Aswat are charged (Counts Three through Eight); the establishment of terrorist websites, in which Kassir is charged (Counts Nine through Fourteen); and a conspiracy to facilitate violent Jihad

in Afghanistan, in which Abu Hamza is charged. (Counts Fifteen through Nineteen).

The Government hopes to prove at trial the following, as well as other facts.

Abu Hamza was a cleric at a London mosque widely known in England for the Jihadist sermons he delivered. In the fall of 1999, Abu Hamza and a United States citizen agreed that Abu Hamza would send two "brothers" from Great Britain to America to assist in the creation of a Jihad training camp here. The "brothers" were Kassir and Aswat.

On or about November 28, 1999, Kassir and Aswat arrived at John F. Kennedy International Airport. Kassir and Aswat then traveled to Seattle, Washington, where they met the American citizen, and spent approximately three-and-a-half-months in the Pacific Northwest. While in the Pacific Northwest, Kassir and Aswat lived in a Seattle mosque ("the Mosque").

At the Mosque, Kassir gave instruction to small groups of men on certain practical aspects of violent Jihad. Kassir showed the men how to build and use a firearm silencer, and how to conduct effective nighttime surveillance of a moving target. In addition, Kassir and Aswat traveled with the American citizen

to a farm complex in Bly, Oregon.  This was the proposed location for the Jihad training camp.  At Bly, Kassir continued to provide guidance to Mosque associates with the workings of Jihad.  Kassir provided instruction on how to kill a man by slitting his throat, and disseminated information from an electronic version of "the Encyclopedia of Jihad."[1]

Kassir complained that the Bly, Oregon operation was not as substantial as he had been told.  He stated that Bly lacked sufficient men and weapons.  Frustrated by this, Kassir said that he would kill the United States citizen and dispose of the body in Bly.  After a stay of approximately three-and-a-half-months, Kassir and Aswat left the United States.

After leaving America, Kassir worked to establish and then to maintain a number of websites.  These websites were allegedly used to disseminate terrorist materials -- including videos showing Jihadis participating in murder and torture, and instructions on how to make bombs and poisons.

---

[1] The Government states that "the Encyclopedia of Jihad is a multi-volume Islamist handbook that provides practical information on, among other things, how to conduct sabotage operations; how to prepare explosives; how to mix poisons; and how to ambush and kill people."

On September 25, 2007, Kassir was brought to the United States from the Czech Republic, following an extradition proceeding. He was arraigned on that day and pleaded not guilty.

## Discussion

### I  Witness Identifications

By a letter dated February 26, 2008, the Government told the defense that photographs were shown to eleven witnesses by law enforcement agents at various times from 2002 to 2005. Ten of the witnesses correctly recognized a photograph of Kassir. In the Omnibus Motion, the defendant seeks an order precluding these ten witnesses from testifying about the out-of-court identification or identifying him at trial ("Preclusion Motion") and, in the alternative, seeks a hearing, pursuant to United States v. Wade, 388 U.S. 218 (1967), with respect to the witnesses' pre-trial identifications of Kassir.

A hearing is not required on all motions to preclude in-court identification, Watkins v. Sowders, 449 U.S. 341, 347, 349 (1981) (citations omitted), and courts often deny such motions without a hearing -- leaving it for the jury to determine whether a witness's in-court identification of the defendant is or is not reliable.

Defendants make no showing that the procedures used in showing the array of photographs to any witnesses were unduly suggestive, and any questions concerning the reliability of witnesses' identifications can be properly raised on cross-examination; cf. United States v. Greo, 85 Cr. 961 (JFK), 1994 WL 202605 at *2 (S.D.N.Y. May 23, 1994) (Keenan, J.) (denying defendant's motion to preclude in court identification).

Any concerns raised by the defense about allegedly suggestive out-of-court identifications can be explored at trial through cross-examination, Watkins, 449 U.S. at 349, and by making "argu[ments] in summation," Manson v. Brathwaite, 432 U.S. 98, 113 n.14 (1977).

Most important here is the fact that identifications of Kassir do not implicate the concerns that animated Wade and its progeny. Wade contemplated a case where the witness would testify about an encounter with a total stranger under circumstances of emergency or emotional stress. This is not the situation here, according to the Government.

In identifying Kassir, the ten Identifying Witnesses were not identifying a man who was, to them, a "total stranger," encountered under "circumstances of emergency or emotional stress." Manson, 432 U.S. at 111-12. The Government states

-6-

"Rather, the Identifying Witnesses knew Kassir well -- as someone they were introduced to, spoke with, lived with, traveled with, or were trained by." (Government June 19, 2008 Memorandum, p. 8).

Summaries of F.B.I. 302 reports supplied by the Government on this motion show that each of the ten Identifying Witnesses knew the defendant. Most of them had spoken to him and none of the encounters was stressful or emotional, as is clear from reading excerpts from the 302s.

There is a huge difference between the ways the Identifying Witnesses knew Kassir, and the situations that require pretrial hearings out of the jury's presence or the suppression of the eyewitness identifications.

A witness to a robbery, a rape or a homicide, see Wade, 388 U.S. at 230, may well be "handicapped in accurately estimating [physical] characteristics...by their very limited opportunity to observe and their lack of prior knowledge of the criminal." Levine & Tapp, The Psychology of Criminal Identification, 121 U. Penn. L. Rev. 1079, 1097 (1973). These concerns do not apply here. The Identifying Witnesses had "knowledge" of Kassir as a man they had met, and they had abundant opportunity to observe Kassir as he committed his

crimes in the United States over the course of a three-and-a-half-month period.

There is no need for a pretrial hearing and the motion to suppress the identifications is denied. It should further be pointed out that the Government, at p. 14 of its June 19, 2008 Memorandum, discloses that other witnesses who spent time with the defendant in the United States and objective travel records will confirm Kassir's presence in the Pacific Northwest during the time frame at issue.

There is one law enforcement witness who saw Kassir in a car during a traffic stop near Bly. This witness identified Kassir from a photograph. This view of the defendant is less substantial than the Identifying Witnesses'. If the Government calls the law enforcement witness as a trial witness and asks him to identify the defendant, the Government has agreed that a brief voir dire with respect to the law enforcement witness would be appropriate. Such hearing will be held out of the presence of the jury during trial.

**II  Jencks Act (18 U.S.C. § 3500) Issue**

The Government has consented to the defense request to preserve its rights to seek 3500 material 30 days before jury

selection and will respond to such a motion if it is made.  No further action is required by the Court at this time.

### III  Federal Rule of Evidence 404(b) Motion

The defendant moves to preclude the Government from offering "prior bad acts" evidence.  This motion is premature at this time.

The Government has not stated what, if any, "prior bad acts" evidence it will seek to introduce at trial.  If the Government wants to introduce "prior bad acts" evidence under FRE 404(b), it is directed to make Rule 404(b) disclosure 30 days before trial so as to afford the defense adequate time to file appropriate motions in limine after the notice has been provided.

### IV  The Roviaro Motion

Kassir wants the identity of and impeachment evidence concerning any of the Government's confidential informants.  The Government states that it has not used any confidential informants within the meaning of Roviaro v. United States, 353 U.S. 53 (1957).  This motion is moot.

### V  The Withdrawn Request Under Rule 12(d)(2)

The defendant originally moved for an order compelling the Government to enumerate the evidence it intends to use in

its case-in-chief, pursuant to Federal Rule of Criminal Procedure 12(d)(2). Defense counsel advised the Government that this motion is withdrawn.

### Conclusion

This constitutes the Court's ruling on the Omnibus Motion.

**IT IS SO ORDERED.**

Dated: New York, New York
July 3, 2008

/s/ John F. Keenan
JOHN F. KEENAN
United States District Judge